UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**ANTHONY TORRES,**         :
    Petitioner,            :
                           :       PRISONER
    v.                     :   Case No. 3:01cv2072(DJS)
                           :
**LARRY J. MYERS,**         :
    Respondent.            :

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Anthony Torres, currently confined at the Northern Correctional Institution in Somers, Connecticut, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction on the charges of sexual assault in the first degree and risk of injury to a child. For the reasons set forth below, the petition is denied.

I.   Procedural Background

In April 1998, after a trial in the Connecticut Superior Court for the Judicial District of Waterbury, a jury convicted the petitioner of ten counts of sexual assault in the first degree in violation of Connecticut General Statutes § 53a-70(a) and four counts of risk of injury to a child in violation of Connecticut General Statutes § 53-21. (See Pet. Writ Habeas Corpus at 1-2.)  On June 18, 1998, a judge sentenced the petitioner to a total effective sentence of forty years imprisonment, execution suspended after thirty years followed by

thirty-five years of probation with special conditions.  (See id. at 2.)

On direct appeal, the petitioner asserted three claims. The petitioner argued that (1) the trial court improperly permitted one of the victims, ("Victim J")  to sit back in her chair out of view of the defendant during her testimony, improperly permitted the fiancé of Victim J to sit next to her during her testimony and allowed these special arrangements to impermissibly bolster Victim J's credibility; (2) the trial court erred in admitting constancy of accusation evidence during the trial; and (3) the trial court erred in failing to redact statements from medical records admitted into evidence.  See State v. Torres, 60 Conn. App. 562, 563-64, 761 A.2d 766, 768 (2000).  On November 7, 2000, the Connecticut Appellate Court affirmed the petitioner's conviction.  See id. at 575, 761 A.2d at 774.  On January 3, 2001, the Connecticut Supreme Court denied the petitioner's request for certification to appeal the decision of the Connecticut Appellate Court.  See State v. Torres, 255 Conn. 925, 767 A.2d 100 (2001).

In November 2001, the petitioner filed the present action raising the first two grounds he asserted on direct appeal of his conviction.

II.  <u>Factual Background</u>

The Connecticut Appellate Court determined that the jury reasonably could have found the following facts:

> The [petitioner] resided with the victims, D and J, and their mother for approximately eight years prior to his arrest, during which time the [petitioner] often looked after D and J while their mother was at work.  D was born in September, 1980, and J was born in February, 1978.  The [petitioner] was born in April, 1957.
>
> For a period of almost six years, from October, 1990, to March, 1996, the [petitioner] sexually assaulted D and J on numerous occasions.  Both victims feared the [petitioner] and what he might do to them if they told anyone about the abuse.  On one occasion, the [petitioner] threatened D by holding a knife to her neck and telling her that he would kill her if she told anyone about the abuse.  At the time of this incident, D was twelve years old.  The [petitioner] also threatened J by using a weapon if she refused to have sex with him.
>
> When D was fourteen years old, she told her mother that she was being sexually abused by the [petitioner].  Although the victims' mother confronted the [petitioner] with the allegations, which he denied, the victims' mother did not report or otherwise pursue the allegations.  The [petitioner] continued to sexually abuse D and J.
>
> In March, 1996, D told a school friend about an incident in which the [petitioner] performed oral sex on her.  Upon the urging of her friend, D reported the incident to a school counselor.  D told the counselor that both she and her sister were being sexually abused by the [petitioner].  When the school counselor questioned J, she admitted that she too was being sexually abused by the [petitioner].

> D and J were taken to the hospital for
> physical examinations.  Thereafter, both D
> and J spoke with an investigator from the
> department of children and families.  D and J
> also gave statements to police from the
> Waterbury police department in which they
> alleged that they had been sexually abused by
> the [petitioner].

Torres, 60 Conn. App. at 564-65, 761 A.2d at 768.

III. Standard of Review

The federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme

Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002).

A decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] has done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694 (2002). A state court decision is an "unreasonable application" of clearly established federal law "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the particular case." Id. When considering the unreasonable application clause, the focus of the inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable." Id. The Supreme Court has emphasized that "an unreasonable application is different from an incorrect one." Id. (citing Williams v. Taylor, 529 U.S. 362, 411 (2000) (holding that a federal court may not issue a writ of habeas corpus under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

5

incorrectly. Rather, that application must also be unreasonable."). In both scenarios, federal law is "clearly established" if it may be found in holdings, not dicta, of the Supreme Court as of the date of the relevant state court decision. Williams, 519 U.S. at 412.

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See Boyette v. Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits).

Collateral review of a conviction is not merely a "rerun of the direct appeal." Lee v. McCaughtry, 933 F.2d 536, 538 (7th Cir.), cert. denied, 502 U.S. 895 (1991). Thus, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Brecht v. Abrahamson, 507 U.S. 619, 634 (1993) (citations and internal quotation marks omitted).

IV. Discussion

The petitioner raises three grounds in support of his petition. He argues (1) the trial court erred in (a) permitting the fiancé of Victim J to sit close to Victim J during her

testimony and (b) permitting Victim J to sit in a position out of eye contact with the petitioner; (2) the trial court erred in failing to conclude that the special arrangements for Victim J's testimony bolstered her credibility; and (3) the trial court improperly admitted certain evidence under the constancy of accusation doctrine.  The respondent argues that the federal court should deny the petition as to part (a) of the first ground for relief and as to the second ground for relief because the petitioner has not demonstrated that the state court decisions were contrary to or an unreasonable application of clearly established federal law.  The respondent contends that part (b) of the first ground for relief is not reviewable due to procedural default.  In addition, the respondent maintains that the third ground for relief is not reviewable because it presents a question of state law only.

    A.   <u>Trial Court Improperly Permitted Fiancé to Sit Next to Victim During Testimony Resulting in Impermissible Bolstering of Victim's Testimony</u>

The petitioner contends that the trial court erred in failing to conduct an evidentiary hearing prior to its decision to permit the fiancé of Victim J to sit next to Victim J during her testimony and that this arrangement impermissibly bolstered Victim J's testimony.  The petitioner further argues that these actions by the trial court violated his rights under the Sixth and Fourteenth Amendments.

The Connecticut Appellate Court determined the following additional facts were relevant to these claims:

> At trial, J was called as a witness. Upon entering the foyer of the courtroom, she broke down and cried, 'No, no, no.' J refused to proceed into the courtroom to testify. The court thereafter excused the jury and took a recess. The state then made a motion to the court seeking special accommodations for J's testimony. Although the court did not hold an evidentiary hearing, as the [petitioner] requested, the court heard the parties' respective arguments on the state's motion. The court thereafter granted the state's request to allow J's fiancé to sit outside the witness box and next to J during her testimony.
>
> ****
>
> Prior to J's testimony, the state called the school psychologist, who testified that J was 'educable mentally retarded.' This conclusion was drawn from the results of certain testing of J.
>
> ****
>
> The following colloquy occurred at trial:
>
> The Court: 'All right, based upon the testimony you heard from the witness this morning, the first witness, with respect to special circumstances regarding the witness [J] and based upon my own observation of the stress and anxiety that she exhibited upon entering the courtroom, I am going to allow these special provisions to be made to assist her in testifying today. I will allow [J's fiancé] to sit where he is seated next to the witness and the witness stand. You are not to communicate in anyway with [J]. Do you understand that, sir?'
>
> [J's Fiancé]: 'Yes, Your Honor.'

> The Court: 'All right. You cannot talk to her
> at all. You can't give her any signals or
> signs or anything. You are simply sitting
> there for moral support and nothing more.
> And that will help you, [J]?'
>
> ***
>
> The court instructed the jury as follows:
> 'Now, you'll . . . note for the record that
> we have our witness on the witness stand and
> there is a young man who is sitting next to
> the witness. That young man is . . .
> identified as the fiancé of the witness. You
> are not to infer anything at all by the
> fact-you're ordered not to infer anything at
> all by the fact that [he] is sitting
> alongside the witness. You are not to infer
> anything if he is to make any facial
> expressions or any gestures of any kind. You
> are to totally disregard that. He is sitting
> there for support of the witness and no other
> reason, and you are not to draw any
> inferences at all from his presence here
> today. Okay?'

Torres, 60 Conn. App. at 565-66, 70 nn.7-8, 71 n.9, 761 A.2d at 769, 771 nn.7-9.

The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend VI. The Supreme Court has held that the Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Coy v. Iowa, 487 U.S. 1012, 1016 (1988).

Upon review of petitioner's claim that the trial court

9

should not have permitted Victim J's fiancé to sit outside the witness box during Victim J's trial testimony, the Connecticut Appellate Court noted that the state statute[1] the petitioner relied on to support his argument concerning the trial court's failure to conduct an evidentiary hearing prior to permitting the special arrangements for the testimony of Victim J was inapplicable because Victim J was over twelve years of age.  See Torres, 60 Conn. App. at 566-67, 761 A.2d at 769.  The court observed, however, that although an evidentiary hearing was not required, the trial court considered the arguments of both the State of Connecticut and the petitioner when the parties argued the State's motion for special arrangements.  See id. at 565-66, 761 A.2d at 769.  The court stated that the petitioner was present in the courtroom during both days of Victim J's testimony and was not prevented from cross-examining her.  See id. at 568, 761 A.2d at 770.  The court concluded that the trial court's decision to permit the fiancé of Victim J to sit by the Victim J during her trial testimony did not impair the petitioner's Sixth Amendment right to confront or cross-examine her.  See id.

Upon review of the petitioner's claim that Victim J's testimony was impermissibly bolstered by the presence of her fiancé just outside the witness box, the Connecticut Appellate Court noted that the trial court had issued cautionary

---

[1] See Conn. Gen. Stat. § 54-86g.

instructions to the jury to disregard the presence of Victim J's fiancé and also informed the fiancé that he should not communicate with Victim J while she testified. See id. at 570-71, 761 A.2d at 771. The court concluded that the presence of the fiancé could not have bolstered the credibility of Victim J in the eyes of the jury. Thus, the court concluded that the trial court's decision was not an abuse of discretion to ensure a fair trial.

If the state court has considered a claim on the merits and the petitioner has not presented clear and convincing evidence to the contrary, the federal court presumes that the state court's factual determinations are correct. See 28 U.S.C. § 2254(e)(1); Boyette v, Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001). Here, the state court decision is supported by specific references to the evidence presented at trial and the credibility of the witnesses. The petitioner has not rebutted that presumption by presenting clear and convincing evidence to the contrary. Thus, the court presumes that the Connecticut Appellate Court's factual findings are correct.

After careful review, the court concludes that the determination by the Connecticut Appellate Court, that the petitioner's right to confront and cross-examine witnesses was not impaired by Victim J's testimony in the presence of her fiancé, was not contrary to or an unreasonable application of

Supreme Court law. The petitioner has identified no clearly established Supreme Court law regarding his claim that the presence of Victim J's fiancé just outside the witness box during her testimony impermissibly bolstered her credibility and the court can discern none.  Thus, the petitioner has not established that the Connecticut Appellate Court's decision regarding the alleged impermissible bolstering of Victim J's testimony was contrary to or an unreasonable application of Supreme Court law. The petition for writ of habeas corpus is denied as to both grounds for relief.

B.  <u>Victim Improperly Permitted to Sit Out of View of Petitioner During Trial Testimony</u>

On direct appeal, the petitioner argued that the trial court erred in permitting Victim J to sit back in the witness box out of the petitioner's view.  The Connecticut Appellate Court declined to review the claim because the petitioner failed to provide an adequate record for review as required by Connecticut Practice Book § 60-5.   See <u>Torres</u>, 60 Conn. App. at 572, 761 A.2d at 772.  The respondent argues that the court should consider this claim to be procedurally defaulted.  The availability of review on the merits of a constitutional claim is limited by various procedural barriers, including rules governing procedural default.  See <u>Daniels v. United States</u>, 532 U.S. 374, 381 (2001); <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).  When a habeas petitioner has failed to comply with state procedural

requirements, the claims will not be reviewed on a federal petition for writ of habeas corpus unless the petitioner can demonstrate cause for his state-court default and prejudice resulting therefrom.  The only exception to this prohibition is where the petitioner can demonstrate that the failure to review the federal claim will result in a fundamental miscarriage of justice.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

The respondent contends that the Connecticut Appellate Court's decision not to review the claim regarding the special arrangements made by the trial court to permit Victim J to sit out of the view of the petitioner in the witness box was based on procedural default, an independent and adequate state ground.  In fact, the appellate court declined to review the claim because the petitioner failed to comply with a rule of appellate procedure regarding the submission of an adequate record for review of the claim.  Thus, respondent argues that the federal court should decline to review the merits of this claim.  The court agrees.

To obtain review of this claim, the petitioner must demonstrate both cause for his default and prejudice resulting therefrom or that denial of review will result in a fundamental miscarriage of justice.  The petitioner asserts no cause for the failure to provide an adequate record on appeal to enable the Connecticut Appellate Court to review the claim concerning

Victim J's position in the witness box during her trial testimony.

> In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. Murray v. Carrier, 477 U.S., at 488,. . . . Objective factors that constitute cause include "'interference by officials'" that makes compliance with the State's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." Ibid. In addition, constitutionally "[i]neffective assistance of counsel . . . is cause." Ibid. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. Id., at 486-488.

McCleskey v. Zant, 499 U.S. 467, 493-94 (1991).

The court concludes that the petitioner has not demonstrated cause to excuse his procedural default. Because the petitioner has not shown cause for the procedural default, the court need not address the prejudice prong of the test. Thus, the petitioner's procedural default precludes federal review of his claims.

The Supreme Court interprets the fundamental miscarriage of justice exception to mean constitutional violation "has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). Nowhere does the petitioner argue that he is innocent of all charges. Thus, the exception does not apply. See Schlup v. Delo, 513 U.S. 298, 316

(1995) (requiring that petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error" to satisfy the fundamental miscarriage of justice exception).  Accordingly, the court declines to review the merits of the petitioner's claim regarding the trial court's decision to permit Victim J to sit back in the witness box during her trial testimony.

    C. <u>Admission of Constancy of Accusation Evidence</u>

The petitioner argues that the trial court failed to properly limit the admission of constancy of accusation evidence pursuant to the test set forth by the Connecticut Supreme Court in <u>State v. Troupe</u>, 237 Conn. 284 (1996).  The only claims cognizable in a federal habeas corpus action are that a state conviction was obtained in violation of some right guaranteed by the United States Constitution or other federal law.  <u>See</u> <u>Estelle</u>, 502 U.S. at 68 (holding that a claim that a state conviction was obtained in violation of state law is not cognizable in the federal court).  Thus, a claim that the state court erred in failing to comply with a decision of the Connecticut Supreme Court regarding the admissibility of constancy of accusation evidence is matter of state law and is not cognizable in this action.  Accordingly, the petition for writ of habeas corpus is denied on this ground.

V.  Conclusion

The Petition for Writ of Habeas Corpus [**doc. #2**] is **DENIED**. Because the petitioner has not made a showing of the denial of a constitutional right, a certificate of appealability shall not issue. The Clerk is directed to enter judgment in favor of the respondent and close this case.

**SO ORDERED** this ___31st___ day of January, 2007, at Hartford, Connecticut.

                              **/s/DJS**
                              _____
                              **DOMINIC J. SQUATRITO**
                              **UNITED STATES DISTRICT JUDGE**